IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID W. BLAKLEY, JR., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 04-0555-CV-W-ODS |
| KANSAS CITY, MISSOURI SCHOOL DISTRICT, et al., | ) |
| Defendants. | ) |

ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. After reviewing the record and the parties' argument, the Court concludes the motion (Doc. # 27) should be granted.

I. BACKGROUND

As an introductory caveat, the Court observes Plaintiff originally filed his Complaint pro se. Counsel entered an appearance approximately three months later; he then requested and was granted additional time to file an Amended Complaint. See Order dated February 22, 2005. Plaintiff did not take advantage of this opportunity, which is unfortunate because the pro se Complaint is unfocused, describes a great deal of alleged misconduct without describing how it relates to Plaintiff's claims, and does not clearly identify the legal basis for his claims. While perhaps sufficient for a pro se litigant, the Court (and undoubtedly the parties) would have benefitted had Counsel brought his expertise to bear and filed an Amended Complaint.

The record reveals the following relevant facts are uncontroverted. In some instances, the facts are uncontroverted by virtue of Plaintiff's admission of Defendants'

Statement of Uncontroverted Facts, which will be indicated by a reference to "SOF # ___." In all other instances, a reference to the Record will be supplied.

### A. Generalized Claims

Plaintiff, an African-American male, has been a teacher in the Kansas City, Missouri School District since 1966. SOF # 4-5. Throughout his employment he has raised a variety of grievances and complaints about perceived discrimination against himself and others. SOF # 8-9.

Plaintiff alleges he was subjected to discrimination in terms of class assignments, support services, and room and class size. In 1978, Plaintiff realized African-American teachers (including himself) were being assigned a larger number of African-American and at-risk students than white teachers. Plaintiff's Depo. at 31-32; see also SOF # 15-16. Throughout his career, Plaintiff has allegedly been subjected to discrimination by being assigned to teach a large number of special education students; however, he concedes that he was particularly successful teaching such students. SOF # 17-19.

Plaintiff asserts the District assigns white teachers larger classrooms and less students than African-American teachers, and that this practice has been going on as early as 1978 and as late as 1983. SOF # 20-23. However, he admits that he was assigned a rather large room when he first began working for the District and retained that room until he began teaching in the computer lab. Plaintiff's Depo. at 41. Upon arriving at his last school (Paseo Academy) in 1994, Plaintiff was given the choice of three classrooms. SOF # 25.

Plaintiff generally alleges in 1978 the District began depriving African-American teachers of needed resources and provided "discriminatory disciplinary support," SOF # 26-29, but never expands or explains this allegation. The District also allegedly failed to clean the classrooms of African-American teachers, but he concedes the custodial staff was understaffed and tended to focus on the rooms of those teachers who complained. SOF # 34-35. Plaintiff contends white teachers were allowed to arrive late without

repercussions (although he cannot identify any white teachers who received this treatment) and that he was subjected to discriminatory evaluations in 1995 and 1999. SOF # 37-39.

Plaintiff alleges the District discriminated against African-American Teachers by assigning them to be "traveling teachers;" that is, teachers who were not assigned a permanent classroom but rather traveled from one classroom to another during the day. Plaintiff concedes he was never a traveling teacher. SOF # 30-31. He also concedes that more recently, white teachers have been assigned to be traveling teachers more often than African-American teachers. SOF # 33. Finally, he alleges the District searched through the drawers and cabinets in his classroom, but he does not know who allegedly engaged in this activity. SOF # 43-44.

## B. Suspensions

Plaintiff claims he was subjected to retaliatory discipline when he was suspended from March 1994 through August 1994 for a physical encounter with a student. SOF # 46-48; Plaintiff's Depo. at 19. He was also suspended for allegedly choking a student in 1999. SOF # 49; Plaintiff's Depo. at 21.

## C. Transfer to Administrative Duty

During the 2001-02 school year, Plaintiff taught ninth grade science and was assigned to teach a learning disabled student named S.M.. SOF # 65. S.M.'s education was administered pursuant to an Individualized Education Plan ("IEP") formulated in accordance with the Individuals with Disabilities Education Act. Defendants' Exhibit G; Walter-Mack Affidavit, ¶ 12.[1] The IEP states in part that S.M. "understands information

---

[1] Plaintiff attempts to controvert this fact with his affidavit. Paragraphs 47 and 48 address this issue and assert no IEP existed. However, those paragraphs rely on a letter from S.M.'s mother that clearly indicates that an IEP exists; in fact, the letter is a

3

better if she can hear it verbally" and advises that "accommodations for state testing may include additional time to complete test [and having] certain sections read and taken in a location where she can focus better." Issues and difficulties arose over Plaintiff's adherence to S.M.'s IEP, Plaintiff's Depo. at 137, 139, 144; G.M.'s Affidavit, ¶¶ 5-7. In late May 2002, Plaintiff, S.M.'s Mother, and two other District officials met to discuss the IEP. After the meeting, S.M.'s mother complained about Plaintiff's conduct during the meeting, reporting Plaintiff "shoved the chair I was seated in against the desk, thus smashing my breasts and chest area. [He also] pointed his finger at my daughter and me and shouted that [S.M. and I] were both liars." G.M.'s Affidavit, ¶¶ 9, 11.

In July 2002, Plaintiff was reassigned to a non-teaching, administrative position. SOF # 80. The letter advising him of this action indicated the District was investigating allegations he was failing to follow the dictates of a student's IEP. The letter does not mention the physical encounter described by S.M.'s mother. Defendants' Exhibit I. He remains employed with the District in a non-teaching position. SOF # 84. His salary has not been reduced; in fact, he has received salary increases. Walter-Mack Affidavit, ¶ 16. He has lost certain opportunities that are available only to teachers, Plaintiff's Affidavit, ¶ 52, but it does not appear that he lost any compensation.[2]

### D. Procedural History

On or about June 12, 2000, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights. Defendants' Exhibit D. He also filed a detailed

---

complaint from S.M.'s mother about Plaintiff's failure to follow the IEP. Plaintiff's Exhibit 5. Moreover, it is hard for Plaintiff to deny an IEP exists when an IEP is present in the record. See Defendants' Exhibit G.

[2]For instance, Plaintiff cannot presently teach in summer school; on the other hand, he is now a full-time administrator and (presumably) is compensated during the summer. Plaintiff carefully avoids stating he earns less as an administrator than he did as a teacher.

4

letter to the EEOC that purported to assert claims on behalf of Plaintiff and others. In the materials submitted to the EEOC, Plaintiff identified his address as "11921 Vail Drive." Plaintiff's Exhibit 3. In April 2001, the EEOC mailed a Right to Sue Letter to Plaintiff at that address. Defendants' Exhibit E. Plaintiff asserts he did not live at that address; he actually lived at 11921 Avila Drive, so he did not actually receive the Right to Sue Letter. The District received its copy.

Plaintiff filed a second charge with the EEOC in November 2002, raising a variety of claims stemming from his transfer to administrative duties.

### E. Identifying Plaintiff's Claims

As mentioned earlier, it is difficult to ascertain the claims Plaintiff presents. Count I purports to assert claims of discriminatory discipline under Tittle VII of the Civil Rights Act and denial of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments. Count II purports to assert claims of retaliation under Titles IV, VI, VII and IX of the Civil Rights Act and the First and Fourth Amendments. Plaintiff's response to Defendants' Motion for Summary Judgment does not shed further light on the legal basis for his claims, nor does it address all of these theories. Nonetheless, the Court will endeavor to address the claims Plaintiff has raised as best as it can.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In

applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff opposes the Court's consideration of summary judgment, contending discrimination turns on issues of intent and therefore factual issues predominate. The Court of Appeals has stated that summary judgment should be viewed cautiously when ruling on issues of intent, but clearly the Court of Appeals also approves the use of summary judgment in discrimination cases where Rule 56's requirements have been met. E.g., Whitley v. Peer Review Sys., 221 F.3d 1053, 1055 (8th Cir. 2000). It should also be noted that, in some instances (as will be seen in this case), summary judgment decisions rest on issues unrelated to intent.

Plaintiff also criticizes the summary judgment procedure, contending it violates the spirit if not the letter of the Seventh Amendment. Obviously, this argument has also been rejected and there is no need for the Court to dwell on this matter in great detail. The Court will simply offer this observation: the jury's purpose is to resolve issues of fact. When there are no material factual disputes, there is no reason for the parties to incur the expense and inconvenience of trial and there is no need to summon jurors to decide matters that are not really in doubt.

A. Generalized Claims

It is not clear how the complaints identified in Part I(A) relate to his claims. Defendants, in an apparent abundance of caution, have presumed Plaintiff is asserting claims directly predicated on these actions. The Court will do the same.

6

## 1. Statute of Limitations

Most of Plaintiff's claims are barred by the statute of limitations. A claim under section 1983 is governed by the state statute of limitations applicable to personal injury actions, so a claim in Missouri must be brought within five years. E.g., Garrett v. Clarke, 147 F.3d 745, 746 (8th Cir. 1998). A claim under Title VII of the Civil Rights Act must be filed within ninety days of the EEOC giving the claimant a right to sue letter. 42 U.S.C. § 200e-5(f)(1). Therefore, the bulk of Plaintiff's complaints – regarding conduct from the beginning of his employment through approximately mid-2000 – are largely time-barred. This includes Plaintiff's complaints about class size, class assignments, lack of support services (including cleaning of classrooms), and discriminatory evaluations.

Plaintiff contends he may still assert a Title VII claim based on the April 2001 Right to Sue Letter because he never received it. There is no dispute, however, that it was mailed to the address provided by Plaintiff. Plaintiff cannot complain about failing to receive the letter when it was mailed to the address provided by him, even if he accidentally provided the wrong address. Cf. Espinoza v. Missouri Pac. R.R., 754 F.2d 1247, 1249 (5th Cir. 1985); Griffin v. Prince William Hosp. Corp., 716 F. Supp. 919, 921 & n.4 (E.D. Va. 1989). An analogy may be drawn to a situation in which the claimant moves after filing an administrative charge; the ninety day period is not tolled by the failure to advise the EEOC of the change in address. E.g., Williams v. Thomson Corp., 383 F.3d 789, 791 (8th Cir. 2004), cert. denied, 125 S. Ct. 1701 (2005). Therefore, the ninety day period should not be tolled by Plaintiff's initial failure to provide his correct address.[3]

---

[3] Interestingly, Plaintiff testified that he received the April 2001 Right to Sue Letter. He also attributed his failure to file suit at that time to factors other than the address error. Plaintiff's Depo. at 192-93, 198.

7

### *2. Claims That Do Not Involve Plaintiff*

Three of the generalized claims do not involve Plaintiff. In other words, Plaintiff does not allege that he was subjected to the discriminatory treatment in question. First, he concedes he was never assigned to be a traveling teacher. Consequently, he cannot maintain a suit alleging the District assigned such duties based on race. Similarly, Plaintiff cannot base a claim on discriminatory assignment of classrooms because he concedes his classroom was "large." Finally, Plaintiff does not allege that he arrived late to school or was disciplined for doing so; therefore, he cannot assert a claim of disparate discipline.

### *3. Failure to Establish a Prima Facie Case of Discrimination*

Discrimination claims are considered under the <u>McDonnell Douglas</u> burden shifting analysis.

> Under the first prong of the McDonnell Douglas burden-shifting framework, the plaintiff must establish a prima facie case of discrimination. Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for taking adverse action against the plaintiff. Thereafter, the burden shifts back to the plaintiff to show that the employer's explanation is actually a pretext for discrimination. The burden of persuasion remains with the plaintiff at all times.

<u>Fast v. Southern Union Co.</u>, 149 F.3d 885, 890 (8th Cir. 1998) (citations omitted).

Plaintiff cannot establish a prima facie case of discrimination with respect to the generalized complaints. To establish a prima facie case, Plaintiff must demonstrate (1) he is a member of a protected class, (2) he was qualified for the position held, and (3) he suffered some adverse employment action under circumstances giving rise to an inference of discrimination. <u>Whitley</u>, 221 F.3d at 1055. "An adverse employment action

8

means a material employment disadvantage, such as a change in salary, benefits, or responsibilities." Sallis v. University of Minnesota, 408 F.3d 470, 476 (8th Cir. 2005) (quotation omitted). "Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action." Cruzan v. Special Sch. Dist. # 1, 294 F.3d 981, 984 (8th Cir. 2002). Thus, Plaintiff's complaints regarding class size and composition, room size, "traveling teachers" and inadequate cleaning of classrooms does not rise to the level of adverse employment action.

Additionally, Plaintiff has not established these conditions or actions occurred in circumstances that give rise to an inference of discrimination. This requirement is usually, but not always, satisfied by showing similarly situated non-minority employees were treated differently. See Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Plaintiff concedes he was adept at teaching special education students, which defeats an inference of discrimination. Plaintiff concedes the custodial staff was understaffed and tended to focus its limited resources on the rooms of teachers who complained; this does not create an inference of discrimination. Plaintiff also concedes that more white teachers than African-American teachers are assigned to be traveling teachers, which does not suggest the assignments are made to discriminate against African-Americans. Finally, Plaintiff cannot identify any white teachers who were treated more leniently than African-American teachers who arrived late to school.

### *4. The Fourth Amendment Claim*

Plaintiff's Fourth Amendment Claim fails because he concedes he has no evidence demonstrating who allegedly opened his desk drawer. This means a jury could not conclude it was any of the individual defendants in this case. The inability to identify a particular person also precludes a finding of liability against the District. E.g., McCoy v. City of Monticello, 411 F.3d 920, 922-23 (8th Cir. 2005) (listing cases holding governmental entity cannot be found liable absent a finding one of its agents is liable). In addition, the District can be found liable only if there is a showing of a policy, custom or

practice of engaging in the conduct Plaintiff alleges. E.g., Doe v. School Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003); Artis v. Francis Howell N. Band Booster Ass'n, 161 F.3d 1178, 1181-82 (8th Cir. 1998). Plaintiff has not alleged the existence of a policy, custom or practice, nor has he identified any evidence in the record that would allow a jury to find one exists.

## B. Suspensions

Claims predicated on Plaintiff's suspensions in 1994 and 1999 suffer from some of the same infirmities identified above. Both claims are time-barred under the Civil Rights Act, and the 1994 suspension is also time-barred under 42 U.S.C. § 1983.[4] The 1999 suspension is not time-barred under 42 U.S.C. § 1983 because Plaintiff was suspended on July 28, 1999, Plaintiff's Depo. at 21-22, and this lawsuit was filed on June 23, 2004. Nonetheless, Defendants are still entitled to summary judgment on claims predicated on the 1999 suspension. The mere fact of the suspension does not satisfy the prima facie case; something extra must be presented to raise an inference of discrimination. Plaintiff's testimony about the incident reveals no suggestion of racial animus in the decision to suspend him; while he denies being in the wrong, he substantially agrees that he did the things that caused the District to suspend him. Plaintiff's Depo. at 22-29. Plaintiff does not offers any evidence that tends to demonstrate his race played a part in the District's decision.

Even if Plaintiff satisfied the requirements of the prima facie case, he still could not prevail because the District has provided a legitimate, nondiscriminatory reason for suspending him in 1999. Plaintiff contends his actions were justified, but concedes he placed his hands around a student's neck. Plaintiff's belief his actions were justified does

---

[4]Plaintiff has also asserted claims under 42 U.S.C. § 1981, but "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." Artis, 161 F.3d at 1181.

10

not create a relevant factual dispute. See Johnson v. AT&T Corp., 422 F.3d 756, ___ (8th Cir. 2005).

### C. Transfer to Administrative Duty

Plaintiff's claims stemming from his transfer to administrative duty are not time-barred and need to be analyzed in full.

First, the Court holds Plaintiff has not suffered an adverse employment action. Plaintiff was reassigned from the classroom to the administrative office and did not suffer a diminution in pay. "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." Turner, 421 F.3d at 697. Plaintiff's pay was not reduced, and while his current duties do not involve classroom instruction he has not identified anything in the record that indicating his current duties reflect "'a considerable downward shift in skill level,'" which would suggest he suffered an adverse employment action. Id. (quoting Myers v. Nebraska Health & Human Servs., 324 F.3d 655, 660 (8th Cir. 2003)).[5]

Second, even if Plaintiff suffered an adverse employment action, there are no facts supporting an inference the decision to relieve him of his teaching duties was based on his race. Plaintiff does not identify any remark suggesting a racial basis for the decision, nor does he identify any similarly situated white employees who were treated more favorably. Indeed, he has consistently stated animosity against him is based on his opposition to policy decisions, particularly those related to implementation of a desegregation order. SOF # 59, 63-64; Plaintiff's Depo. at 86-91, 227; Defendant's Exhibit C (Letter from Plaintiff dated August 19, 2002). This does not demonstrate a

---

[5]At various times, Plaintiff's move to administrative duties has been described as a "suspension." E.g., Defendant's Exhibit I. This does not change the Court's view; regardless of the label, the substance of the change cannot be described as "adverse."

11

racial motivation on the District's part. See Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100-01 (8th Cir. 1995), cert. denied, 517 U.S. 1104 (1996).

Viewing Plaintiff's deposition testimony in his favor reveals his belief he was suspended because of his criticism of District policies, expenditures, and efforts to adhere to a desegregation order. This could be interpreted as a claim of First Amendment retaliation, but Defendants are entitled to summary judgment on such a claim as well. To prevail, Plaintiff must establish that his speech was entitled to First Amendment protection and that it was a "substantial or motivating factor" in the District's decision to suspend him. Campbell v. Arkansas Dep't of Correction, 155 F.3d 950, 958 (8th Cir. 1998). Assuming for the sake of argument that Plaintiff's speech was entitled to First Amendment protection, the Court concludes there is no factual dispute on the second component. Plaintiff does not identify any statement or action supporting this point, nor does he identify any similarly situated employees who were treated more favorably. Although he denies doing anything wrong, Plaintiff concedes he was not following S.M.'s IEP. Plaintiff's Depo. at 132, 143-45. Ultimately, Plaintiff offers nothing other than his supposition that his complaints contributed to the decision to assign him administrative duties, but "[e]vidence, not contentions, avoids summary judgment." Al-Zubaidy v. TEK Indus., 406 F.3d 1030, 1036 (8th Cir. 2005) (internal quotations omitted). Here, there is simply nothing in the record that would support a finding of a causal connection between Plaintiff's statements and the District's decision.

### D. Due Process

Plaintiff contends he has a due process right to a name-clearing hearing. The Court disagrees. A name-clearing hearing is required if "1) the public employer's reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee's firing."

12

Gibson v. Caruthersville School Dist. No. 8, 336 F.3d 768, 773 (8th Cir. 2003). Plaintiff has not satisfied the first two elements.

With regard to the first element, Plaintiff does not suggest – and the Court does not believe – the accusation that one has failed to comply with an IEP is so stigmatizing that a person's standing in the community or profession is damaged. This conclusion is buttressed by those cases describing accusations that support a right to a name-clearing hearing. "The requisite stigma has been found when the allegations involve 'dishonesty, immorality, criminality, racism, or the like.'" Id. (quoting Waddell v. Forney, 108 F.3d 889, 895 (8th Cir. 1997)). The necessary stigma has also been found when the plaintiff presents evidence demonstrating the accusation has caused him or her difficulty finding work in the profession. Id. Nothing in this record demonstrates the requisite damage to Plaintiff's standing.

Even if Plaintiff were stigmatized, there is no indication the District publicized the reason it removed Plaintiff from his teaching position and assigned him to administrative duties. Plaintiff has no right (or need) to clear his name absent publication of the "accusation."

### E. Qualified Immunity

The individual defendants assert they are entitled to qualified immunity. The Court has not addressed this issue, believing (1) the rationale presented above is sufficient and (2) in light of the Court's ruling, the failure to address qualified immunity does not prejudice the individual defendants. Indeed, the purpose for qualified immunity – removing the need for public officials to participate in the demands of litigation – will not be served given the late juncture at which the issue was raised. This does not mean the individual defendants are not entitled to qualified immunity; the Court simply does not reach the issue because it believes the effort is unnecessary in this case.

13

## F. Other Potential Claims

As noted on several occasions, the Court has attempted to discern Plaintiff's claims. The breadth of Plaintiff's grievances and the general lack of focus in his filings have created a situation in which Plaintiff may believe (or at least contend) there have been additional claims asserted. The Court believes any claims Plaintiff may assert run afoul of the legal principles discussed herein, particularly the statute of limitations and the lack of any evidence demonstrating an improper motive on the District's part.

## III. CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment is granted and judgment shall be entered in favor of all Defendants.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 6, 2005          UNITED STATES DISTRICT COURT